Your Name: Grégoire Gentil
Address: 1037 Amarillo avenue, Palo Alto, Ca 94303, USA
Phone Number: +1 646 549 7779
E-mail Address: gregoire@gentil.com
Pro Se Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Grégoire Gentil<br>Plaintiff | Case Number: |
| vs. | DEMAND FOR JURY TRIAL<br>Yes □ No √ |
| Wingfield GmbH<br>Defendant | |

## PARTIES

1. Plaintiff.
Name: Grégoire Gentil
Address: 1037 Amarillo avenue Palo Alto, Ca 94303
Telephone: +1 646 549 7779

2. Defendant.
Name: Wingfield GmbH
Address: Oeltzenstraße 13, 30169 Hannover, Germany

## JURISDICTION

3. My case belongs in federal court

√ under federal question jurisdiction because it is involves a federal law or right.

Patent infringement, Trade Dress Rights infringement

□ under diversity jurisdiction because none of the plaintiffs live in the same state as any of the defendants and the amount of damages is more than $75,000.

## VENUE

4. Venue is appropriate in this Court because:

√ a substantial part of the events I am suing about happened in this district.

□ a substantial part of the property I am suing about is located in this district.

□ I am suing the U.S. government, federal agency, or federal official in his or her official capacity <u>and</u> I live in this district.

□ at least one defendant is located in this District and any other defendants are located in California.

## INTRA-DISTRICT ASSIGNMENT

5. Because this lawsuit arose in Santa Clara County, it should be assigned to the San Jose Division of this Court.

## STATEMENT OF FACTS

6. 'Grégoire Gentil' has developed a sports smart camera that applies to racket sports, especially tennis. 'Grégoire Gentil' has filed a USPTO provisional in December 2015 and got US Patent 10,143,907 which describes in great details the system. 'Grégoire Gentil' has developed a product named In/Out. It's being sold in USA and internationally since 2017 (http://inout.tennis).

7. ‘Wingfield GmbH’ has knowingly developed a “copycat”, a similar device both in form and features (http://wingfield.io). It has started commercialization in USA in January 2020. ‘Wingfield GmbH’ has knowingly infringed US Patent 10,143,907 and the Trade Dress Rights of the In/Out device.

8. ‘Grégoire Gentil’ is seeking royalties, lost profits and punitive damages.

## BACKGROUND INFORMATION: TIMELINE

9. Before detailing how Wingfield GmbH infringes claims of US Patent 10,143,907 and the Trade Dress Rights of the In/Out device, here is a brief time line of some key events.

10. In 2014, Grégoire Gentil, a long-time tennis player and an electronics enthusiast, has started to develop a system that can track players and balls on a tennis court. The idea is to detect a ball bounce during a tennis rally (when two players exchange shots), compare it to the position of the court lines (this is “line calling”) and use data for stats, coaching tool and help to the umpire.

11. On December 9 2015, a provisional has been filed at the USPTO describing this idea.

12. On December 6 2016, an utility Patent claiming the benefit of the provisional mentioned above has been filed at the USPTO, as well as at the PCT.

13. In March 2017, Grégoire Gentil has publicly announced the In/Out product which is a faithful implementation of the Patent 10,143,907. Multiple press companies located in USA and also in Europe including Germany, such as CNN, Forbes, Tennis Magazine have covered the announcement of the product.

14. In July 2017, Shipment of the products have started and haven't stopped since then.

15. In October 2018, after very careful review by experimented UPSTO examiner Jon Newcome, the USPTO has granted Patent 10,143,907 to Grégoire Gentil.

16. In 2019, Wingfield GmbH has announced a product that is an exact replica of the In/Out product.

17. In January 2020, Wingfield GmbH has started to target the USA market with some marketing operations. They have participated to the biggest professional tennis show, the "Racket Paddle Sport show" in Florida. Grégoire Gentil was a participant and was exposing the In/Out product at this show too.

18. In February 2020, Wingfield GmbH has started to make sale of their product on US soil. Wingfield GmbH has announced that the

Southern Methodist University in Texas, USA was a customer of their.

# CLAIMS
## First claim

Infringement claim #1 of US Patent 10,143,907
Infringement 35 U.S. Code 271

Defendant who violated it: Wingfield GmbH

19. US Patent 10,143,907 claim #1 is listed below:

*A tennis line-calling system that makes line calls for a plurality of tennis players striking a tennis ball with their respective tennis racquets, causing the tennis ball to move across each side of a tennis court, comprising:*

*(a) an integrated tennis line-calling device that includes:*
*(i) a camera system that generates successive video frames covering court lines of the tennis court and the tennis ball as it moves across each side of the tennis court; and*
*(ii) a line call analyzer that:*
*(A) processes the video frames in real time,*
*(B) determines when the tennis ball bounces on the playing surface of the tennis court based upon the processing of the video frames,*

*(C) determines the location of the tennis ball upon its initial bounce relative to the location of one or more of the court lines of the tennis court, and*

*(D) makes a line call based upon the relative location of the tennis ball upon its initial bounce and the one or more court lines of the tennis court;*

*and*

*(b) an attachment mechanism that enables the integrated tennis line-calling device to be attached to or in proximity to a net post of a tennis court.*

20. The Wingfield GmbH website at https://www.wingfield.io/smart-tracking-the-power-of-ai has the following information about their product:

*"In order to make our system „understand" what it „sees" through the cameras, we use computer vision and AI technology, which is also used in autonomous driving, for example."*

*"In the areas of human, ball and stroke detection, the primary objective is to extract as much tennis-relevant information as possible from the image."*

*"Now we also know whether a point has just been won"*

*"One of the biggest features in the match mode is the automatic scoring. Walter [the Wingfield engine] counts the result in the*

*background. Cause after all, we want to be able to call up video sequences and statistics on the appropriate scores after each match.”*

21. Wingfield GmbH product is a camera system installed on the net post. In real-time, it takes success video frames for each half-court, it processes it to recognize players and balls, it recognizes a ball bounce, it locates the ball bounce along the court lines, it decides if the ball is in or out and it stores that information for stats purpose.

22. The following pictures are available at https://www.wingfield.io/smart-tracking-the-power-of-ai:






23. A demo of the product has been posted on youtube at https://www.youtube.com/watch?v=XZ_cQnZdEg4 “Hawk-Eye für alle! _ Stachis Wochenschau #24 _ myTennis”
The following screenshots have been extracted from this video:






24. Those screenshots show that the Wingfield GmbH product makes a line call decision for each bounce as it follows the score and it computes the “won points” for statistics purpose. For the records, the second screenshot says “Gewonnen Aufschlagpunkte” which can be translated to English by “Serve Points Won”.

25. Wingfield GmbH product is a camera product that captures (claim #1) (a) (i) and processes in real-time video frames (claim #1) (a) (ii) (A), determines that a ball has bounced (claim #1) (a) (ii) (B), its location (claim #1) (a) (ii) (C), and makes a line calling decision (claim #1) (a) (ii) (D). The Wingfield GmbH product is attached to the net post (claim #1) (b).

26. Therefore, with everything proved above, Grégoire Gentil claims that Wingfield GmbH is infringing claim #1 of US Patent 10,143,907.

27. Wingfield GmbH is promoting and advertising their product in USA. In January 2020, Wingfield GmbH was marketing, advertising the infringing product on US soil as shown by the following photos and marketing materials taken during the tennis trade show “Racket Paddle Sport show” in January 2020 in Florida, USA. This show is the major tennis industry show in USA every year.






28. Additionally, Wingfield GmbH has sold this product in USA to the Southern Methodist University in Texas, USA. Wingfield GmbH has posted on the social networkLinkedIn about this sale. A picture of the installation of the Wingfield GmbH product at the Southern Methodist University in Texas, USA as reported on LinkedIn is shown below:




29. According to title 35 U.S. Code 271: "*Whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented*

*invention during the term of the patent therefore, infringes the patent.*".

30. Therefore, it's proven that Wingfield GmbH infringes claim #1 of US Patent 10,143,907 and infringes title 35 U.S. Code 271.

## CLAIMS
## Second claim

Infringement claim #2 of US Patent 10,143,907
35 U.S. Code 271

Defendant who violated it: Wingfield GmbH

31. US Patent 10,143,907 claim #2 is listed below:

*A tennis line-calling system that makes line calls for a plurality of tennis players striking a tennis ball with their respective tennis racquets, causing the tennis ball to move across each side of a tennis court, comprising:*

*(a) a video capture device that includes:*
*(i) a camera system that generates successive video frames covering court lines of the tennis court and the tennis ball as it moves across each side of the tennis court; and*

*(ii) a wireless real-time communicator that wirelessly transfers the video frames in real time to an external tennis line-calling device;*

*(b) an attachment mechanism that enables the video capture device to be attached to or in proximity to a net post of a tennis court; and*

*(c) the external tennis line-calling device that includes:*

*(i) a wireless receiver that receives the video frames transferred from the video capture device; and*

*(ii) a line call analyzer that:*

*(A) processes the video frames in real time,*

*(B) determines when the tennis ball bounces on the playing surface of the tennis court based upon the processing of the video frames,*

*(C) determines the location of the tennis ball upon its initial bounce relative to the location of one or more of the court lines of the tennis court, and*

*(D) makes a line call based upon the relative location of the tennis ball upon its initial bounce and the one or more court lines of the tennis court.*

32. Wingfield GmbH product is including a remote camera which is streaming wirelessly to the main system installed on the net post. Here is the link showing this feature: https://www.wingfield.io/the-wingfield-box-technology-meets-design as well as a screenshot:



**Wingfield Box**

The Wingfield Box tracks all activities on the court and can be installed all by yourself. It consists of an integrated net post, a touch screen, two high-speed cameras including processor unit and an internet module (SIM).

**IP camera**

You can mount the IP camera anywhere you want – it provides the video material of each session. So you can enjoy every training session or match once again.



33. Therefore, with everything proved above, Grégoire Gentil claims that Wingfield GmbH product is a camera product that captures video frames (claim #2) (a) (i), including a wireless camera (claim #2) (a) (ii), is attached to the net post (claim #2) (b), receives frames from the wireless camera (claim #2) (c) (i), and processes in real-time frames (claim #2) (c) (ii) (A), determines that a ball has bounced (claim #2) (c) (ii) (B), its location (claim #2) (c) (ii) (C), and makes a line calling decision (claim #2) (c) (ii) (D).

34. Wingfield GmbH is infringing claim #2 of US Patent 10,143,907.

35. As explained in first claim, Wingfield GmbH is selling their product in USA.

36. According to title 35 U.S. Code § 271: "*Whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.*".

37. Therefore, it's proven that Wingfield GmbH infringes claim #2 of US Patent 10,143,907 and infringes title 35 U.S. Code 271.

## CLAIMS
## Third claim

Infringement claim #3 of US Patent 10,143,907
35 U.S. Code 271

Defendant who violated it: Wingfield GmbH

38. US Patent 10,143,907 claim #3 is listed below:

*A tennis line-calling system that makes line calls for a plurality of tennis players striking a tennis ball with their respective tennis racquets, causing the tennis ball to move across each side of a tennis court, comprising:*

*(a) an integrated tennis line-calling device that includes:*

*(i) a camera system that generates successive video frames covering court lines of the tennis court and the tennis ball as it moves across each side of the tennis court, wherein the camera system includes a single fixed-location video camera covering each side of the tennis court; and*

*(ii) a line call analyzer that:*

*(A) processes the video frames in real time,*

*(B) determines when the tennis ball bounces on the playing surface of the tennis court based upon the processing of the video frames,*

*(C) determines the location of the tennis ball upon its initial bounce relative to the location of one or more of the court lines of the tennis court, and*

*(D) makes a line call based upon the relative location of the tennis ball upon its initial bounce and the one or more court lines of the tennis court;*

*and*

*(b) an attachment mechanism that enables the integrated tennis line-calling device to be attached to or in proximity to a net post of a tennis court.*

39. Therefore, with everything proved above, Grégoire Gentil claims that Wingfield GmbH product is a camera product that captures video frame with one camera lens for each half court (claim #3) (a) (i) and processes in real-time frames (claim #3) (a) (ii) (A), determines that a ball has bounced (claim #3) (a) (ii) (B), its location (claim #3) (a) (ii) (C), and makes a line calling decision (claim #3) (a) (ii) (D). The Wingfield GmbH product is attached to the net post (claim #3) (b).

40. Wingfield GmbH is infringing claim #3 of US Patent 10,143,907.

41. As explained in first claim, Wingfield GmbH is selling their product in USA.

42. According to title 35 U.S. Code § 271: "*Whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.*".

43. Therefore, it's proven that Wingfield GmbH infringes claim #2 of US Patent 10,143,907 and infringes title 35 U.S. Code 271.

## CLAIMS
## Fourth claim

Trade Dress Rights Infringement
Title 15 U.S. Code 1125

Defendant who violated it: Wingfield GmbH

44. Wingfield GmbH product infringes trade dress rights of the In/Out device developed by Grégoire Gentil. United States law provides that the distinctive and nonfunctional aspects of a device can

acquire trade dress protection, and cannot be copied. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992); Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209-210 (2000). A comparison of Wingfield's device as advertised on its website shows its similarity to In/Out: Wingfield's copying of In/Out's distinctive appearance constitutes a classic violation of United States trade dress law.

45. It's very important to understand that ALL existing camera-based products for tennis without any exception have cameras around the court usually against the fence. A very well known example is Playsight and a picture of their installation is provide below:




46. Many other examples exist such as the product of Mojjo, a French

company, or Hawk-EYE, an English company belonging to Sony Corporation. None of all those products are using the location of the net post. None of them are based on a dual camera (one for each half court) system. This is true for all devices existing on the USA market today. There is no system on the net post except In/Out.

47. The In/Out device is distinguished by its location on the net post with two cameras, one for each half-court. A picture of the In/Out device installed on the net post is shown below:




48. Grégoire Gentil can swear under oath that multiple people mention the In/Out device as “the cameras on the net post”. Grégoire Gentil can swear under oath that multiple people told him: “you are the guy with the cameras on the net post”.

49. The In/Out product is therefore completely characterized and

recognized by the cameras on the net post location.

50. The Wingfield GmbH product is installed on the net post. It has two cameras, one for each half court. A picture of the Wingfield GmbH product is shown below:



51. Therefore, with everything proved above, Grégoire Gentil claims that Wingfield GmbH product is infringing the Trade Dress Rights of the In/Out product.

52. As explained in first claim, Wingfield GmbH is advertising, promoting and selling their product in USA.

53. According to title 15 U.S. Code 1125, the basis for protection is section 43(a) of the Lanham Act, which provides protection for "any word, term, name, symbol, or device, or any combination thereof"

used "on or in connection with any goods or services, or any container for goods."

54. Like unregistered trademarks, an unregistered trade dress is entitled to protection if it is distinctive, either inherently or through an acquired distinctiveness (or secondary meaning).

55. Therefore, it's proven that Wingfield GmbH infringes title 15 U.S. Code 1127.

## KNOWINGLY WILLFUL INFRINGEMENTS

56. Grégoire Gentil wants to state that Wingfield GmbH was knowingly and willfully infringing Patent 10,143,907 and the Trade Dress Rights of the In/Out product because of the following four reasons:

57. The announcement of the In/Out product in March 2017 was massive. Multiple press entities report it. Grégoire Gentil mentioned to multiple publications that a Patent was being filed with the USPTO. As the product was completely unique, all the tennis industry was aware of the announcement. In/Out received multiple awards including the very prestigious 'Tennis Industry Association' 'Innovation Challenge' in 2017. If you were in the tennis industry and especially if you were working a sport start-up, it was impossible to miss that announcement. Additionally, Wingfield GmbH CEO is now

part of the jury of the yearly challenge ‘Tennis Industry Association’ ‘Innovation Challenge’.

58. Wingfield GmbH ‘Founder’ registered to the newsletter of In/Out by visiting the website http://inout.tennnis and submitted his gmail address julius.burlage@gmail.com.

59. Wingfield GmbH ‘Founder’ Julius Burlage, made an order of an In/Out device on July 21, 2017, well before Wingfield GmbH announces or starts commercializing their product even in their native country Germany. This order was delivered to Edenstrasse 1, 30161 Hannover in Germany, USPS tracking number LZ150349627US.

60. Wingfield GmbH filed a Patent to the EPO in 2018. The international search report made by the EPO on the Wingfield GmbH Patent and dated 13.02.2020 listed the Patent 10,143,907 of Grégoire Gentil. This search report can be retrieved at:

https://register.epo.org/documentView?number=EP.2019070875.W&documentId=id00000052561415

61. Everything proves that Wingfield GmbH was knowingly and willfully infringing Patent 10,143,907 and the Trade Dress Rights of the In/Out product: Wingfield GmbH was aware of Grégoire Gentil work, Wingfield GmbH was aware of the In/Out product and its distinctness, and more important than anything else, Wingfield GmbH was aware of Patent 10,143,907.

## DEMAND FOR RELIEF

62. Grégoire Gentil seeks a preliminary injunction so that Wingfield GmbH immediately stops selling and promoting by any mean including website, videos, social networking and any other private or public means the Wingfield GmbH product. A separate motion is being filed for this.

63. Grégoire Gentil is seeking royalties for infringed claim #1 of Patent 10,143,907. Wingfield GmbH is infringing title 35 U.S. Code 271.

64. Grégoire Gentil is seeking royalties for infringed claim #2 of Patent 10,143,907. Wingfield GmbH is infringing title 35 U.S. Code 271.

65. Grégoire Gentil is seeking royalties for infringed claim #3 of Patent 10,143,907. Wingfield GmbH is infringing title 35 U.S. Code 271.

66. Grégoire Gentil is seeking for lost profits of the licensing of claim #1 of Patent 10,143,907. Wingfield GmbH is infringing title 35 U.S. Code 271.

67. Grégoire Gentil is seeking for lost profits of the licensing of claim #2 of Patent 10,143,907. Wingfield GmbH is infringing title 35 U.S. Code 271.

68. Grégoire Gentil is seeking for lost profits of the licensing of claim #3 of Patent 10,143,907. Wingfield GmbH is infringing title 35 U.S. Code 271.

69. Grégoire Gentil is seeking for lost profits of the sales of In/Out devices. Wingfield GmbH is infringing title 35 U.S. Code 271 and title 15 U.S. Code 1127.

70. Grégoire Gentil is seeking legal compensations for filing this lawsuit.

71. Grégoire Gentil is seeking for reimbursement of the cost of the lawsuit, including, non exhaustively, deposition, travel, expertise and everything related to this lawsuit.

72. Because Wingfield GmbH was fully aware of the infringement of Patent 10,143,907 and the infringement of the Dress Trade Rights of the In/Out product as explained in the previous section entitled "KNOWINGLY WILLFUL INFRINGEMENTS", Grégoire Gentil is seeking punitive damages of five (5) millions US dollars. This amount is justified by the intentional and willful character of the infringements and the intentional unlawful behavior.

73. Respectfully submitted,

74. Date: July 24, 2020

Sign Name:



Print Name: Grégoire Gentil