1  M. Elizabeth Day (SBN 177125))
   eday@feinday.com
2  Marc Belloli (SBN 244290)
   mbelloli@feinday.com
3  **FEINBERG DAY KRAMER ALBERTI**
4  **LIM TONKOVICH & BELLOLI LLP**
   577 Airport Blvd., Suite 250
5  Burlingame, CA. 94010
   Telephone: 650 825-4300
6  Facsimile: 650 460-8443

7
   Chad E. Nydegger (*pro hac vice forthcoming*)
8  *cnydegger@wnlaw.com*
   **WORKMAN NYDEGGER**
9  60 East South Temple Suite 1000
   Salt Lake City, UT 84111
10 Telephone: (801) 533-9800
   Facsimile: (801) 328-1707
11
12 *Attorneys for Defendant Wingfield GmbH*

13              **IN THE UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
14

15 | GREGOIRE ALEXANDRE GENTIL, | Case No: 3:20-cv-05358-EMC |
16 | Plaintiff, | |
17 | v.. | **DEFENDANT WINGFIELD GmbH'S MOTION TO DISMISS CLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
18 | WINGFIELD GMBH, | |
19 | Defendant. | Date:   February 4, 2021 |
20 | | Time:  1:30 pm |
21 | | Crtrm 5, 17th Floor |
22 | | Judge Edward M. Chen |

23
24
25
26
27
28

i

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................2

II.   Background Pleadings in the Complaint ..................................................................3

III.  Argument ..................................................................................................................4

      A.    Legal Standard for dismissal under Rule 12(b)(6)........................................4

      B.    Plaintiff's Trade Dress Infringement Claim Fails for Lack of a Protectible Trade Dress ...................................................................................................4

            1.    Standard for trade dress infringement.............................................5

            2.    The elements Plaintiff claims as trade dress are functional ..........5

      C.    Plaintiff's Theft of Trade Secret Claim Fails for Lack of a Protectible Trade Secret.............................................................................................................7

            1.    Standard for theft of trade secret....................................................7

            2.    Plaintiff's alleged trade secret is public knowledge .....................8

      D.    Plaintiff's Claim for Punitive Damages Fails for Lack of a Legal Basis.................9

IV.  Conclusion..............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Alta Devices, Inc. v. LG Electronics, Inc.*,
  343 F. Supp.3d 868 (N.D. Cal. 2018) ...................................................................................9

*Attia v. Google, LLC*,
  Case No. 19-15771, 2020 WL 7380256 (9th Cir., Dec. 16, 2020) .........................................9

*Clicks Billards, Inc. v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001) ...............................................................................................5

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) ...............................................................................................5

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998) ...............................................................................................5

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008) .................................................................................................5

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .................................................................................................6

*Rototron Corp. v. Lake Shore Burial Vault Co.*,
  712 F.2d 1214 (7th Cir. 1983), *aff'd,* 113 F.3d 1258 (Fed. Cir. 1997) ................................10

*Sciacca v. Apple, Inc.*,
  362 F. Supp.3d 787 (N.D. Cal. 2019) ....................................................................................5

*Space Data Corp. v. X,* Case No. 16-CV-03260-BLF, 2017 WL 5013363, at *2
  (N.D. Cal. Feb. 16, 2017) .....................................................................................................9

*Stutx Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*,
  909 F. Supp. 1353 (C.D. Cal. 1995) ....................................................................................10

*Talking Rain Beverage Co., Inc. v. S. Beach Beverage Co.*,
  349 F.3d 601 (9th Cir. 2003) .................................................................................................5

*Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*,
  587 F.3d 1339 (Fed. Cir. 2009) .............................................................................................9

*VIP Prods. LLC v. Jack Daniel's Properties, Inc.*,
  953 F.3d 1170 (2020) ............................................................................................................5

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
  529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) .......................................................5

*WeRide Corp. v. Kun Huang*,
    379 F. Supp.3d 834 (N.D. Cal. 2019) ......................................................................................8, 9

**Statutes**

15 U.S.C. § 1117(a) ............................................................................................................................9

18 U.S.C. § 1839(3) ...........................................................................................................................8

35 U.S.C. § 284..................................................................................................................................9

35 U.S.C. § 285................................................................................................................................10

Cal. Civ. Code § 3426.1(d) ................................................................................................................7

Defend Trade Secrets Act ..................................................................................................................7

Lanham Act........................................................................................................................................9

Patent Act.......................................................................................................................................3, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................................................2, 4

Rule 12 ...............................................................................................................................................5

Rule 201(b) ........................................................................................................................................5

**NOTICE OF MOTION AND MOTION.**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 4, 2021, or as soon thereafter as the matter may be heard, in his Court, located at San Francisco Courthouse, Courtroom 5, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Wingfield GmbH ("Defendant") will and hereby does move for an Order dismissing Plaintiff Gregoire Alexandre Gentile's ("Plaintiff") claims for trade dress infringement, theft of trade secret and punitive damages.

This motion is based upon this Notice of Motion and the accompanying Memorandum of Points and Authorities, the [Proposed] Order filed concurrently herewith, and upon such other and further oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing on this motion.

1 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.    INTRODUCTION**

3     Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant respectfully requests the Court to dismiss Plaintiff's claims for trade dress infringement, theft of trade secret, and punitive damages for failure to state a claim upon which relief may be granted.  Plaintiff's claim for trade dress infringement fails to state a claim for relief because the sole aspects identified in the Complaint as constituting Plaintiff's alleged trade dress are functional in nature, and, consequently, are not eligible for trade dress protection.  Indeed, the pictures of Plaintiff's and Defendant's respective products as pleaded in the Complaint demonstrate that they are completely different in aesthetic design. Consequently, amendment of Plaintiff's claim for trade dress infringement would be futile because Plaintiff cannot identify any aspect of its product eligible for trade dress protection that is also found in Defendant's product.

    Plaintiff's claim for theft of trade secret fails because Plaintiff has failed to plead a valid trade secret.  Plaintiff pleads that Defendant stole Plaintiff's trade secret through purchase of Plaintiff's In/Out product.  But a product that is sold to the public is in the public domain, and, consequently, not a "trade secret."  Plaintiff does not plead that Defendant obtained any of Plaintiff's alleged "trade secret" information through any means other than through studying its publicly available In/Out product.  As further confirmation that the information allegedly taken by Defendant is not protectible by trade secret, Plaintiff pleads that the alleged "trade secret" is the "technology of Plaintiff's '907 patent." Patents are documents statutorily required to inform and teach the public about new technology, and, consequently, information and technology disclosed in patents is the very antithesis of a "trade secret."  Whereas Plaintiff fails to plead that Wingfield has obtained any of Plaintiff's information other than through Plaintiff's publicly sold product and issued U.S. patent, Plaintiff's claim for theft of trade secret should be dismissed with prejudice as amendment of this claim would be futile.

    Plaintiff seeks "punitive damages of five (5) millions [sic] US dollars" because "Wingfield GmbH was fully aware of the infringement of Patent 10,143,907 and the infringement of the Dress

2

1  Trade Rights [sic] of the In/Out product…." However, the Patent Act does not provide for or allow
2  "punitive damages" unrelated to actual damages assessed.  Moreover, because Plaintiff has failed
3  to state a claim for trade dress infringement, that claim also cannot support "punitive damages."
4  Because Plaintiff has failed to plead any legal basis for "punitive damages" of $5M under the
5  Patent Act, and indeed no such arbitrary punitive damages are allowed under the Patent Act, and
6  Plaintiff has failed to plead a claim for trade dress infringement, Plaintiff's claims for punitive
7  damages for willful patent and trade dress infringement should be dismissed.

## II.   BACKGROUND PLEADINGS IN THE COMPLAINT

*Pro se* Plaintiff markets and sells a "tennis line calling" device that makes real-time line calls during play to inform the players whether a ball landed "in" or "out" of the relevant boundaries of the tennis court. (Dkt. No. 1, ¶¶ 10 and 13.)  Plaintiff obtained U.S. Patent No. 10,143,907, which describes and claims the technology of the In/Out device. (*Id.* at ¶ 6.)  The In/Out device is strapped to the top of the net post and has two cameras, one directed at each side of the court, that are used to record the ball during play and to make line calls indicating whether the ball bounced "in" or "out" of the court's boundaries. (*Id.* at ¶ 47.)  Plaintiff's In/Out device is shown in the following annotated picture in the Complaint:



(*Id.*)

3

Defendant also sells a video camera product used to record play on a tennis court. (*Id.* at ¶ 22.) Defendant's product does not attach on top of the net post, but rather replaces the entire net post. (*Id.*) Defendant's product has two cameras, one for recording each side of the tennis court. (*Id.*) Defendant's product analyzes the video recorded and stores information about the location of the ball, players, etc. "for stats purpose [sic]." (*Id.*) Defendant's product is shown in the following picture reproduced from the Complaint:

### III. ARGUMENT

#### A. Legal Standard for dismissal under Rule 12(b)(6)

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) where there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). When a complaint is dismissed, a court must consider whether to grant leave to amend. *Sciacca v. Apple, Inc.*, 362 F. Supp.3d 787, 795 (N.D. Cal. 2019). Leave to amend generally shall be denied where, among other potential factors, amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

#### B. Plaintiff's Trade Dress Infringement Claim Fails for Lack of a Protectible Trade Dress

### 1. Standard for trade dress infringement

"Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combination, texture or graphics." *Clicks Billards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). To obtain trade dress protection, "a product's trade dress or design must be non-functional and distinctive." *VIP Prods. LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170, 1173 (2020) (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *Talking Rain Beverage Co., Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003)). Thus, "[t]o state an infringement claim a plaintiff must meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion." *Id.* (alterations omitted) (quoting *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046-47 (9th Cir. 1998)).

### 2. The elements Plaintiff claims as trade dress are functional

The Complaint alleges that two elements constitute the trade dress of the In/Out product, namely (1) the location of the device "on the net post", and (2) having "two cameras, one for each half-court." (Dkt. No. 1, ¶¶ 47-49.) The Complaint does not, however, plead that these elements are non-functional as required to state a claim for trade dress infringement. To the contrary, the location of the device on the net post and the use of one camera for each half-court are functional elements.

That the location of the device at the net post and the use of two cameras, one for each half-court, are functional elements is demonstrated by Plaintiff's U.S. Patent No. 10,143,907 (the "'907 patent")[1] asserted in this case. (Exh. A.) The '907 patent explains that "locating the device in

---

[1] Whereas the Complaint asserts infringement of the '907 patent, the Court can consider the content of the '907 patent as part of the Complaint in deciding a motion to dismiss. To the extent the Court finds that the '907 patent is not part of the Complaint, Defendant requests the Court to take judicial notice of the '907 patent. Rule 201(b) provides that a court may judicially notice a fact that is not subject to reasonable dispute because it "(1) is generally known within the trial court's territorial jurisdiction" or "(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court "may take judicial notice of matters of public record" and consider them without converting a Rule 12 motion into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal

proximity to the net post provides a relatively close-up view of each side of the tennis court (regardless of the number of cameras employed)." (Exh. A at col. 5, ll. 13-19.) The location of the device on the net post is also an element in each of the independent claims 1-3, which claim that the device is "to be attached to or in proximity to a net post." (Dkt. No. 1, at ¶¶ 19 (claim 1), 31 (claim 2) and 38 (claim 3); *see also* Exh. A at claims 1-3.)  Claiming the feature of attaching the device "to or in proximity to a net post" further emphasizes the important functionality of the location of the device relative to the net post.

Turning to the element of using two cameras, the '907 patent teaches, "In another embodiment, the device includes two such cameras, with each camera having a field of view covering one of the two sides of the tennis court (effectively providing greater resolution per camera by covering a smaller area." (Exh. A at col. 5, ll. 20-26.)  The feature of using two cameras, one for each side of the tennis court, is also claimed in claim 3 of the '907 patent, which recites "wherein the camera system includes a single fixed-location video camera covering each side of the tennis court." (Dkt. No. 1, at ¶ 38 (claim 3); *see also* Exh. A at claim 3.)   Thus, the '907 patent confirms that using two cameras, one for each side of the court, has a functionality that provides specific benefits, including better resolution over the use of a single camera for the entire court.

Because both the location of the device and the use of two cameras is functional, as confirmed by Plaintiff's own '907 patent, Plaintiff is not able to establish the required element of nonfunctionality for trade dress protection.  Consequently, Plaintiff has failed to state a claim for trade dress infringement, and this claim should be dismissed.

Plaintiff's claim for trade dress infringement should be dismissed with prejudice as leave to amend would be futile. As seen in the pictures of Plaintiff's In/Out product and Defendant's Wingfield product provided in the Complaint, reproduced here, there is no similarity between the products other than their location at the net post and use of two cameras.

---

quotation marks and citation omitted.  The '907 patent is a matter of public record and its contents can be accurately and readily determined from the records of the U.S. Patent and Trademark Office such that its accuracy cannot reasonably be questioned.

Plaintiff's In/Out Product             Defendant's Wingfield Product




The In/Out product is a small device that attaches to the top of the net post. The Wingfield product is a much larger device that has an integral net post located inside the outer casing of the product. The devices are completely different in shape, size, color combination, image, design, and appearance. Consequently, amendment of Plaintiff's trade dress infringement claim would be futile, and this claim should be dismissed with prejudice.

### C. Plaintiff's Theft of Trade Secret Claim Fails for Lack of a Protectible Trade Secret

#### 1. Standard for theft of trade secret

A trade secret is "information that (1) derives independent economic value, actual or potential, from not being generally known to, or readily ascertainable by other people who can obtain economic value from its disclosure or use and (2) is subject to reasonable efforts to maintain its secrecy." *WeRide Corp. v. Kun Huang*, 379 F. Supp.3d 834, 845-46 (N.D. Cal. 2019) (citing 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d)). To state a claim for trade secret misappropriation under the Defend Trade Secrets Act, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F. Supp.3d 868, 877 (N.D. Cal. 2018) (quoting *Space Data Corp. v. X*, Case No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)).

### 2. Plaintiff's alleged trade secret is public knowledge

As noted above, the first required element to state a claim for misappropriation of trade secret is to establish the existence of a trade secret owned by Plaintiff. The Amended Complaint pleads that "Defendant purchased and used the In/Out in an effort to replicate, duplicate [sic] the same technology also described in US Patent 10,143,907." (Dkt. No. 9, ¶ 5.) This sole allegation to substantiate Plaintiff's theft of trade secret claim fails for two reasons.

First, a trade secret is information that is "not being generally known to, or readily ascertainable by other people who can obtain economic value from its disclosure or use." *WeRide*, 379 F. Supp.3d at 845-46 (citations omitted). Yet the Complaint pleads that Wingfield obtained the alleged trade secret by "purchas[ing] and us[ing] the In/Out" product that was publicly available. Because the information Plaintiff alleges to be a trade secret was obtained through "purchase and use" of the publicly-available product, it was "readily ascertainable" by Defendant and, consequently, does not qualify as a trade secret.

Second, the Complaint pleads that the information allegedly stolen by Defendant is "the same technology also described in US Patent 10,143,907." (Dkt. No. 9, ¶ 5.) The Ninth Circuit recently held that it is "well-settled that publication of information in a patent application eliminates any trade secrecy." *Attia v. Google, LLC*, Case No. 19-15771, 2020 WL 7380256 (9th Cir., Dec. 16, 2020) (citing *Ultimax Cement Mfg. Co. v. CTS Cement Mfg. Co.*, 587 F.3d 1339, 1355-56 (Fed. Cir. 2009) (holding that the district court properly granted summary judgment disposing of plaintiffs' trade secret claims under California law because plaintiffs could not prove the existence of a trade secret where its trade secret had been "disclosed in a patent," making it "generally known to the public"); *see also Stutx Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995), citing *Rototron Corp. v. Lake Shore Burial Vault Co.*, 712 F.2d 1214, 1215 (7th Cir. 1983) ("It is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished. . . ."), *aff'd,* 113 F.3d 1258 (Fed. Cir. 1997)). Because the Plaintiff's alleged trade secret is disclosed

1 in Plaintiff's '907 patent as pleaded in the Complaint, it is now publicly available and has lost any
2 trade secret protection. Consequently, this claim should be dismissed.

3       Plaintiff's claim for trade secret misappropriation should be dismissed with prejudice as
4 leave to amend would be futile. Defendant's sole sources of information concerning Plaintiff's
5 technology are its publicly available In/Out product and Plaintiff's '907 patent. Because each of
6 these sources of information is in the public domain, any information readily ascertainable from
7 these sources by Defendant cannot be a trade secret. Consequently, Plaintiff is unable to identify
8 any trade secret misappropriated by Wingfield and amendment would be futile.

9       **D.**    **Plaintiff's Claim for Punitive Damages Fails for Lack of a Legal Basis**

10       Plaintiff requests the Court to award "punitive damages of five (5) millions [sic] US
11 dollars" for Defendant's alleged "KNOWINGLY WILLFUL INFRINGEMENTS" of Plaintiff's
12 alleged trade dress and the claims of the '907 patent. (Dkt. No. 1, ¶ 72.) However, neither the
13 Patent Act nor the Lanham Act provide for punitive damages unrelated to actual damages awarded.
14 By the way of background and context, Wingfield has sold only two allegedly infringing products[2]
15 in the United States for total gross sales of less than $5,000. Despite the low value of potential
16 actual damages in this case, *pro se* Plaintiff's claim for $5M in "punitive" damages divorced from
17 any actual damages has proved to be an unsurmountable obstacle to settling this case.

18       Plaintiff's claim for theft of trade secret cannot support Plaintiff's claim for $5M in
19 punitive damages for two reasons. First, Plaintiff has failed to state a claim for trade dress
20 infringement, and that claim should be dismissed for the reasons set forth above. Second, even if
21 Plaintiff's trade dress infringement claim were to survive, the Lanham Act does not provide for
22 punitive damages. The Lanham Act expressly limits any assessment of damages to three times the
23 amount of actual damages found. 15 U.S.C. § 1117(a). The Lanham Act further provides that any
24 such assessment of damages "shall constitute compensation and not a penalty." *Id.* Plaintiff does

---

[2] Defendant disputes that its accused product infringes any claim of the '907 patent, and that the claims of the '907 patent are valid, but concedes that Plaintiff has at least alleged sufficient facts to meet the pleading standard for the claims of patent infringement. Nevertheless, Defendant expects the claims for patent infringement to be dismissed on summary judgment.

not plead facts to support any specific amount of actual damages.  Thus, Plaintiff's claim for $5M in "punitive" damages are truly punitive in nature, and are not allowed under the Lanham Act.

The Patent Act similarly limits any damages award for patent infringement to "up to three times the amount [of damages] found or assessed." 35 U.S.C. § 284. However, Plaintiff does not plead facts to support any specific amount of actual damages due to patent infringement. Consequently, Plaintiff has failed to plead facts to support an award of "punitive" damages of $5M.  Because the Patent Act does not allow for punitive damages of an arbitrary amount, and Plaintiff has not pleaded facts to support actual damages that, if tripled, would amount to $5M, Plaintiff has failed to adequately plead a claim for $5M in "punitive" damages, and this claim should be dismissed.  Plaintiff's claim for $5M in "punitive" damages should be dismissed without prejudice[3] and leave to amend the claim for enhanced damages "up to three times the amount found assessed" as allowed by 35 U.S.C. § 285.

### IV. CONCLUSION

Plaintiff's claim for trade dress infringement should be dismissed with prejudice because Plaintiff's alleged dress is functional.  Plaintiff's claim for theft of trade secret should be dismissed with prejudice because Plaintiff's alleged trade secret has been placed in the public knowledge through its publicly sold In/Out device and its '907 patent.  Plaintiff's claim for $5M in punitive damages should be dismissed because such an arbitrary award of punitive damages divorced from actual damages incurred is not supported by the Lanham Act or the Patent Act.

Dated: December 30, 2020          FEINBERG DAY KRAMER ALBERTI LIM
                                  TONKOVICH & BELLOLI  LLP

                                  By:    /s/ M. Elizabeth Day
                                         M. Elizabeth Day

                                  *Attorneys for Defendant* Wingfield GmbH

---

[3] Defendant's concession that Plaintiff could potentially amend the Complaint to state a claim for enhanced damages under 35 U.S.C. § 284 is not a concession that such a claim would prevail. To the contrary, Defendant disputes that it has infringed any claim of the '907 patent, that the claims of the '907 patent are valid, and that any infringement of the '907 patent by Defendant was willful.